***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUE TO BE DETERMINED
1. Whether plaintiff is entitled to ongoing temporary total disability compensation?
2. Whether plaintiff is reasonably complying with the prior Order of Deputy *Page 2 
Commissioner Ledford?
3. Whether plaintiff is entitled to additional medical treatment, including but not limited to, treatment for mental health and pain management?
4. Whether defendant is entitled to a credit for any temporary total compensation already paid to plaintiff?
 *********** DEPOSITIONS
1. The deposition of Dr. Richard D. Bey, with Defendant's Exhibit (1) attached to the deposition transcript has been admitted.
2. The deposition of Dr. Thomas Jolly has been admitted.
3. The deposition of Dr. Lori Coe, with Deposition Exhibit (1) attached to the deposition transcript has been admitted.
4. The deposition of Leslie B. Duffy, with Defendant's Exhibits (1), (2) and (3) attached to the deposition transcript has been admitted.
5. The deposition of William O. Bell with Deposition Exhibits (1) and (2) attached to the deposition transcript has been admitted.
6. The deposition of Anthony Enoch, with Defendant's Exhibits (1), (2) and (3) attached to the deposition transcript has been admitted.
7. The deposition of Dottie Gail Davis, with Deposition Exhibit (1) attached to the deposition transcript has been admitted.
 *********** EXHIBITS
1. A Pre-Trial Agreement, which was admitted into the record and marked as *Page 3 
Stipulated Exhibit (1);
2. Medical Records, which were admitted into the record and marked as Stipulated Exhibit (2);
3. Vocational Rehabilitation Records, which were admitted into the record and marked as Stipulated Exhibit (3);
4. Industrial Commission Forms, which were admitted into the record and marked as Stipulated Exhibit (4);
5. An Opinion and Award filed by Deputy Commissioner Kim Ledford on 28 October 2009, which was admitted into the record and marked as Stipulated Exhibit (5);
6. Prior Medical Records, which were admitted into the record and marked as Stipulated Exhibit (6);
7. Medical Records and Social Security Administration-Notice of Deposition, which were admitted into the record and marked as Plaintiff's Exhibit (1);
8. Correspondence from Triangle Orthopaedic to Plaintiff, which was admitted into the record and marked as Plaintiff's Exhibit (2);
9. The Pre-Hearing Deposition of Ms. Mona Jean Rumfelt taken on 15 September 2010 with Deposition Exhibits (1), (2), (3) and 4 attached to the deposition transcript, which was admitted into the record and marked as Defendant's Exhibit (1);
10. Plaintiff's Responses to Discovery, which were admitted into the record and marked as Defendant's Exhibit (2);
11. Investigative Reports, which were admitted into the record and marked as Defendant's Exhibit (3);
12. Surveillance DVDs, which were admitted into the record and marked as *Page 4 
Defendant's Exhibits (4a through 4g) and;
13. Still Photographs from Surveillance Footage, which were admitted into the record and marked as Defendant's Exhibits (5a through 5w).
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. On 3 May 2001, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. An employment relationship existed between plaintiff and defendant on 3 May 2001, at which time plaintiff sustained a compensable injury to her back.
5. Defendant is a duly qualified self-insured. Its claims are administered by its Risk Management department.
6. This case was initially heard before Deputy Commissioner Kim Ledford on 15 February 2006. An Opinion and Award was entered in this case by Deputy Commissioner Ledford on 28 October 2009. The findings of facts, conclusions of law and award are set forth therein and speak for themselves.
7. The parties appeared at mediation scheduled for 14 July 2010. The formal result *Page 5 
of the mediation was an impasse.
8. This hearing was requested by defendant.
9. Plaintiff has continued receiving temporary total disability compensation in the amount of $265.75 since the last hearing on 15 February 2006.
 ***********
Based upon the foregoing Stipulations and the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before Deputy Commissioner Griffin, plaintiff was fifty-one (51) years of age. Plaintiff is a high school graduate, and her work experience includes positions as a flight attendant and as a detention officer with the Forsyth County Sheriff's Department at the County Detention Center.
2. In July 1999, plaintiff began her employment with defendant-employer as a safety and security officer.
3. On 3 May 2001, plaintiff sustained an admittedly compensable injury by accident to her lower back while assisting a patient onto a gurney. Defendants initially filed an Industrial Commission Form 63, but did not issue a denial within the ninety (90) day time limit as prescribed by N.C. Gen. Stat. § 97-18(d).
4. For her lower back injury, plaintiff sought medical treatment from Dr. John Wilson, a neurosurgeon. On 8 August 2001, Dr. Wilson performed a left-sided lumbar laminectomy and discectomy surgical procedure at L5-S1.
5. In March 2002, Dr. Wilson opined that plaintiff had reached maximum medical improvement and assigned a ten percent (10%) permanent partial disability rating to her back. *Page 6 
Additionally, Dr. Wilson released plaintiff to return to work in the light to medium duty category.
6. On 28 October 2009, Deputy Commissioner Kim Ledford issued an Opinion and Award ordering plaintiff to comply with any reasonable vocational efforts approved by her physicians and offered by defendant. Additionally, Deputy Commissioner Ledford ordered defendant to continue paying plaintiff temporary total disability compensation until further Order of the Commission. Pursuant thereto, defendant has continued to pay ongoing temporary total disability compensation since the filing of the 28 October 2009 Opinion and Award.
7. A Functional Capacity Evaluation was initially scheduled for 22 December 2009. However, plaintiff did not attend because she reported being allegedly too ill. Plaintiff did not provide a medical excuse for her absence. Surveillance conducted on this date shows plaintiff shopping at the Country Junction market and eating at a Mexican restaurant.
8. Thereafter, the Functional Capacity Evaluation was rescheduled for 7 January 2010. However, the physical therapist indicated that plaintiff was unable to perform any material handling and was unable to lift even one pound. As a result, the physical therapist concluded plaintiff was unable to work.
9. Subsequently, defendant scheduled a second Functional Capacity Evaluation with High Point Regional Health Services for 12 May 2010. On 11 May 2010, plaintiff cancelled the appointment stating she was sick and would not be able to complete the scheduled Evaluation. Surveillance conducted on 12 May 2010, shows plaintiff away from her home for seven (7) hours. During the time she was away from home, plaintiff was observed driving herself to the Country Junction, shopping, and carrying a shopping bag to a truck. Additionally, plaintiff was shown to be able to lower and close the tailgate of her pickup truck after a store employee placed *Page 7 
a large box in the bed of the truck. Later in the afternoon, plaintiff was observed making numerous purchases in the Cracker Barrel in Clemmons and pumping gas into her vehicle at a gas station. When plaintiff returned home from shopping, she was observed unloading the boxes and bags from her truck and carrying them into her garage. At no time while plaintiff was unloading the items from her truck did she use a cane or walk with a limp.
10. On 26 May 2010, a Functional Capacity Evaluation was administered by Leslie Duffy, physical therapist. According to the results of the Functional Capacity Evaluation, plaintiff is capable of performing work in the sedentary category. Ms. Duffy opined that plaintiff's activities in the surveillance footage in March and May 2010 were inconsistent with her presentation at the Functional Capacity Evaluation. Ms. Duffy was unable to test plaintiff's two-handed carry during the material handling portion because plaintiff insisted on holding her cane the entire time. By contrast, plaintiff carried numerous boxes and other items from the driveway into her home on 12 May 2010 using both hands and without the assistance of a cane. In the surveillance, Ms. Duffy noted that plaintiff was able to walk to her mailbox over a distance of approximately fifty (50) yards at a normal pace. Plaintiff was also observed to be able to walk around her home and yard without the use of a cane. During the Functional Capacity Evaluation, plaintiff appeared with a cane and pronounced limp and walked extremely slow during the normal walking test during the Evaluation.
11. Based on the preponderance of the evidence in view of the entire record, including testimony, medical records and surveillance footage, the Full Commission finds that plaintiff did not put forth reasonable efforts in completing the Functional Capacity Evaluations.
12. Dr. William Bell, a neurosurgeon, also provided treatment for plaintiff following her compensable injury. In early October 2010, plaintiff returned to Dr. Bell for the first time *Page 8 
since 2 October 2006 with complaints of pain in her tailbone. An MRI revealed normal post-surgical changes, and Dr. Bell did not recommend further treatment.
13. Dr. Bell opined that a Functional Capacity Evaluation was a reasonable method of assessing plaintiff's capabilities. In his opinion, plaintiff was capable of performing sedentary work.
14. Beginning in 1997 and continuing to 15 November 2006, Dr. Thomas Jolly, a family physician, provided medical care for plaintiff. Dr. Jolly discharged plaintiff from his practice in November of 2006 when he learned plaintiff was receiving some of the same controlled substances for pain from other providers that he was prescribing. Dr. Jolly has deferred to Dr. Bell's opinion regarding plaintiff's physical work restrictions.
15. From 15 January 2008 to 2 February 2009, plaintiff was treated by Dr. Lori Coe, a family physician, for various conditions such as allergies, asthma, blood pressure, acid reflux, chronic pain and anxiety. On 28 August 2009, Dr. Coe discontinued prescribing narcotic medications to plaintiff for chronic pain due to a negative drug screen. Dr. Coe did not write plaintiff out of work during the course of her treatment. Additionally, Dr. Coe was unable to give an opinion on the cause of plaintiff's anxiety or depression.
16. In January 2010, plaintiff sought treatment from Dr. Richard Bey, a neurologist, regarding headaches. Dr. Bey determined that plaintiff's headaches were not causally related to her 3 May 2001 injury and the lumbar laminectomy that which was necessitated by her compensable back injury. On 21 October 2011, plaintiff reported confusion and memory problems, which Dr. Bey related to her anxiety and possible depression. Dr. Bey then referred plaintiff to Dr. Ray Andrews, a psychiatrist, for further evaluation. There is no evidence of record that plaintiff ever presented to Dr. Andrews following Dr. Bey's referral. *Page 9 
17. Since the entry of the prior Opinion and Award by Deputy Commissioner Ledford, other than the Functional Capacity Evaluations, defendant has not sought further evaluations of plaintiff's physical capabilities. Therefore, based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that plaintiff is capable of performing sedentary work.
18. In July 2010, defendant assigned a vocational rehabilitation specialist, Dottie Davis, to assist plaintiff in finding suitable employment. Ms. Davis searched for employment within the Employment Security Commission Job Bank, Career Builder, triadcareers.com, state job listings for Forsyth and Guildford Counties and county positions with Forsyth County. Since the initial visit in August 2010, Ms. Davis identified over fifty (50) potential sedentary positions that were compatible with plaintiff's work history and experience. Some of the jobs identified by Ms. Davis include clerical positions at alarm and security companies, as well as positions as a Customer Service Representative, travel liaison, leisure travel consultant, receptionist, 911 dispatcher, bank teller, guest service representative at hotels and cafeteria monitor.
19. Beginning in 2004, plaintiff has worked as the Chief Democratic Judge for her polling precinct in Forsyth County. Prior to her promotion as Chief Judge, she worked as an election official for ten (10) years. In her position as Chief Judge, plaintiff oversees two other election judges and performs various tasks each election day. Plaintiff did not advise Ms. Davis of her election work during the assessment phase of vocational rehabilitation. As a result, Ms. Davis was unable to explore the transferrable skills plaintiff has obtained working in this position.
20. Plaintiff has refused to follow up on all but one job lead identified by Ms. Davis. Additionally, plaintiff has refused to consider jobs outside of the immediate Winston-Salem area *Page 10 
or those positions in which first shift job was not offered. Ms. Davis opined that plaintiff has not cooperated with vocational rehabilitation or used her as a resource in locating employment.
21. Vocational expert Anthony Enoch was employed by defendant to perform a labor market study for plaintiff and to review the vocational rehabilitation reports from Ms. Davis. Mr. Enoch identified six available sedentary jobs in the local area for plaintiff. In his opinion, based on plaintiff's work history and physical abilities, she is presently employable.
22. Based upon the preponderance of the evidence in view of the entire record, including the testimony, the stipulated medical records, vocational reports and surveillance footage, the Full Commission finds that plaintiff is not motivated to find a job. The Full Commission further finds that although plaintiff has engaged in some disingenuous vocational efforts, she has not made a good-faith, reasonable effort to fully cooperate with vocational services as shown by the manner in which she is magnifying her symptoms of pain and her other self limiting behavior.
23. Plaintiff's treating physicians have opined that she is capable of returning to sedentary work as indicated in her Functional Capacity Evaluation. Defendant initiated vocational rehabilitation to assist plaintiff in returning to suitable employment. However, plaintiff has failed to actively participate in vocational services or conduct a meaningful job search. Plaintiff's refusal to cooperate with vocational rehabilitation efforts is not justified. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that through her conduct and behavior, plaintiff has continued to willfully violate the
28 October 2009 Opinion and Award filed by Deputy Commissioner Kim Ledford that compelled her compliance with vocational rehabilitation services.
24. Plaintiff was not compliant with defendant-employer's efforts at vocational *Page 11 
rehabilitation and as of the date of the 8 March 2011 Opinion and Award by Deputy Commissioner Griffin defendant is entitled to suspend her compensation until plaintiff's refusal to cooperate with vocational rehabilitation has ceased.
25. Given the suspension of indemnity compensation, defendant shall provide plaintiff and the Full Commission the specific action or actions plaintiff must take to end the suspension and reinstate indemnity compensation within fifteen (15) days of the filing of this Opinion and Award. Upon receipt of this information, the Full Commission will issue an Amended Opinion and Award or Order regarding this contingency.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, and the preponderance of the evidence based upon the entire record, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 3 May 2001, plaintiff sustained an admittedly compensable injury by accident to her lower back. N.C. Gen. Stat. § 97-2(6).
2. On 29 October 2009, Deputy Commissioner Kim Ledford ordered plaintiff to comply with reasonable vocational rehabilitation efforts. N.C. Gen. Stat. § 97-25.
3. Plaintiff's refusal to cooperate with vocational rehabilitation efforts is not justified. N.C. Gen. Stat. § 97-25.
4. Based upon the preponderance of the evidence, in view of the entire record, the Full Commission concludes that plaintiff was not compliant with defendant's efforts at vocational rehabilitation and as of the 8 March 2011 Opinion and Award by Deputy Commissioner Griffin defendant is entitled to suspend her compensation until plaintiff's refusal to cooperate with vocational rehabilitation has ceased. N.C. Gen. Stat. § 97-25. Given the *Page 12 
suspension of indemnity compensation, defendant shall provided plaintiff and the Full Commission the specific action or actions plaintiff must take to end the suspension and reinstate indemnity compensation within fifteen (15) days of the filing of this Opinion and Award. Id. Upon receipt of this information, the Full Commission will issue an Amended Opinion and Award or Order regarding this contingency. Id.
5. As a result of her compensable injury, plaintiff has received medical treatment and is entitled to receive further medical treatment that would effect a cure, give relief or lessen her period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1, when bills for the same have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. § 97-25. Defendants shall designate a physician as plaintiff's authorized treating physician to assess the appropriate course of medical treatment and her physical capabilities. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's indemnity compensation shall be suspended from the date of this Opinion and Award. Given the suspension of indemnity compensation, defendant shall provided plaintiff and the Full Commission the specific action or actions plaintiff must take to end the suspension and reinstate indemnity compensation within fifteen (15) days of the filing of this Opinion and Award. Upon receipt of this information, the Full Commission will issue an Amended Opinion and Award or Order regarding this contingency.
2. Defendant shall pay the medical expenses incurred or to be incurred by plaintiff *Page 13 
as a result of her compensable injury when bills for the same have been submitted according to proper Industrial Commission procedure.
3. Defendant shall designate a physician as plaintiff's current authorized treating physician.
4. Defendant shall pay the costs.
IT IS FURTHER ORDERED that this claim is HEREBY REMOVED from the Full Commission hearing docket.
This the __ date of _____ 2011.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________________ DANNY L. McDONALD COMMISSIONER *Page 1